## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN'S OFFICE

2005 APR -4 P 3: 59

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |  |
|---|---|---|
| Franz Guzman | : | |
| aka "Antonio Camacho" | : | Case No. DKT 1:03CR-10309-001 |
| **Petitioner** | : | |
| v. | : | THE HON. Rya W. Zobel |
| | : | U.S. Dist. Judge |
| The United States | : | |
| Of America | : | **05 - 10669 RWZ** |
| **Respondent** | : | |

---

### The Petitioner's Memorandum Of Law, Points And Authorities In Support Of His Motion: To Vacate, Set Aside Or To Correct His Sentence Pursuant To Title 28 U.S.C. Sect. 2255

**COMES NOW**, the Petitioner, Franz Guzman or aka "Antonio Camacho" in a **Pro-Se** fashion and respectfully files this Memorandum Of Law, Points And Authorities In Support Of His Motion To Vacate, Set Aside Or Correct His Sentence Pursuant To Title 28 U.S.C. § 2255. The main thrust of the Petitioner's herein argument is that without jury findings as to enhancements, predicate violations and other integral elements which effect the Petitioner's final federal sentencing calculations; that his present 120 month (10 year) sentence violates Due Process principles; the concept of Notice as to be given to the accused; Rule 11(e) of Federal Procedure; the Grand Jury Clause and other aspects of the criminal adjudication process itself. His corresponding, assigned 5 year period of Supervised Release violates this concept also. -1-

The above even with and while considering the Petitioner's Rule 35, 5K1 credits which were alloted for his cooperation with the authorities, and the eventual reduction in the overall federal sentence that he received for same. With the present significance being in the sense that before having received the cooperative Downward Departure that he did; his potential sentence time exposure was originally, incorrectly set in violation of constitutional principles via the thereto associated "enhancements" and "priors" based criminal history aspect(s) which erroneously placed the Petitioner in a Criminal History Category of V; Offense Level 33 with a possible imprisonment range of between 262 and 327 months. Petitioner seeks the removal therefrom of all types of enhancements.

With the ultimate operative ramification of the aforementioned being the now U.S.S. Guideline incorrectly derived, original potential sentence time having the Downward Departure: Rule 35, 5K1 credits applied to it instead of the much lesser, original real sentence exposure range as would be determined from the instant offense's actual penalty alone which more accurately reflects the Petitioner's then non-enhanced,as constitutionally dictated true sentence possibility. The later without the applications of either enhancements or priors, or for that matter the incorrectly construed "Career Offender" label for same. All of these aforemention which were applied to the Petitioner yet were not determined by, rejected by or otherwise assigned to him by a sitting jury of his peers in line with constitutional law and Supreme preference. Thereby first dictating the removal of the Petitioner's"leadership" enhancement and the negation of his "priors" for calculation purposes. And having his 5K1 credits then applied to this realistic version.

The above was however, NOT done for the Petitioner and therefore, any government sponsored agreement or waiver(s) which originate from

it, were based upon or fomented by the above situation in error which the government conducted and then made for practical and inclusive, sentence only purposes; VOID and UNENFORCEABLE and subject to now, modification in order to accomodate the aforementioned and the herein constitutional requirements, etc. The Petitioner is seeking to modify his sentence structure only for this reason.

The Petitioner is also respectfully, eternally grateful for the government sponsored, cooperative agreement sentence credit that he has received thus far, yet he only wishes to also see justice done in the fairest and most complete senses possible via this application.

To wit, this application raises several questions of constitutional, statutory, evidentiary and procedural law. Some of the issues are admittedly complex or novel as presented here. However, the sentence imposed upon the Petitioner is; in view of his age and personal possibilities as well as family obligation, is lengthy and of a most profound consequence. Therefore, the issues in this application as challenging as they might be; they must be brought forth for further logical and realistic review.

The Petitioner respectfully requests that this Honorable Court entertain an Evidentiary Hearing to further develop the Record.

Following the question of whether the Petitioner has alleged constitutional error, it is respectfully presented that this Court construe this Pro-Se Application liberally. See: Haines v. Kerner, 404 519, 520-21 (1972) [per curiam]. It is with great sincerity that the herein Petitioner offers the enclosed to the Court in anticipation of exercising not only his corresponding rights; but to also obtain justice in its truest form as it relates to his case as presented.

## Statement Of Case

Citing the instant offense date 07-08-2003, the herein Petitioner was the subject of an investigation which via government allegations, stated that the Petitioner was the "leader" and organizer of a five-member Drug Conspiracy which had as its goal and purpose to Possess With The Intent To Distribute; Cocaine Base, Cocaine/Heroin in violation of 21 U.S.C. Sect. 846 and with refereence to Sect. 853; "Drug Forfeiture" allegations via Indictment No. 1:03CR1-309-001. This alleged conspiracy to which the Petitioner later pled guilty was later the arrangement between the Petitioner and the government or authorities which resulted 5K1 provisions were arrived at and which involved a quantity of 232.6 grams of cocaine as being distributed by co-defendants "Cape" and "Siete". The Petitioner/Defendant was assigned responsibility for a total of 306 grams of cocaine and 61.3 kilograms of marijuana for equivalency purposes, pursuant to U.S.S. Guidelines § 2D1.1 (c)(4). This, for a Base Level of 32 and which was determined using the interceptions of telephone calls among the participants. The entire scenario of which took place in the Lowell, Mass. area.

Additionally, under the U.S.S.G. and its provisions, the Petitioner was enhanced by four(4) points for his alleged role as the "leader" and organizer thereof which led to his being also assigned an adjusted Offense Level of 36 using § 3B1.1(a).

The Petitioner pled guilty before the Hon. Judge Rya W. Zobel and he stipulated to the aforementioned via Plea Agreement. He received; following government acceptance and urgings, 5K1 credit arriving at a final sentence of 120 months of incarceration with 5 years of Supervised

Release. He was first however, additionally assigned a 3 point Downward Departure for Acceptance Of Responsibility; for a final score of 33 for sentence calculation under § 3E1.1(a)and (b). The Petitioner was sentenced in the above Boston Federal Court on 10-27-2004.

The Petitioner stipulated to the aforementioned; but these stipulations were unconstitutional since they were in violation of the recent U.S. Supreme Court rulings regarding Blakely, Booker and Fanfan under the (5th and) 6th Amendment of the U.S. Constitution. The U.S.S.G. enhancements as used are in violation of Blakely v. Wash., 542 U.S. __ 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004); In re Winship, 397 U.S. 358 (1970); Shepard v. U.S., No. 03-9168; Fanfan v. U.S., No. 04-105, S. Ct. (2005); Booker v. U.S., 04-104, S. Ct. (2005); Bailey v. U.S., 516 U.S. 137, 133 L. Ed. 2d 472, 116 S. Ct. 501; Bousley v. U.S., 523 U.S. 614(1998), and Glover v. United States,503 U.S. 198.

The Petitioner was never given any kind of truly meaningful Pre-Sentence Report which was intrinsically revealing, and he received no Hearing which was of a similar nature, etc. His Counsel merely took it upon himself to handle all matters associated with same; only instead over-anxiously simply, erroneously focusing more on the then formulated and exercised cooperative informant agreement and its negotiations, etc. which were then taking place while only then later, much later informing the Petitioner of his exposure to "Career Offender" type sentencing threats. Never fully explaining that the lack of jury participation in the Petitioner's sentencing invalidated the correctness of his full potential sentence calculation considering all factors as they should be considered. This was done with complete disregard as to the Petitioner's participation whatsoever, as well as with disregaard to his knowledge. The Petitioner in fact, protested concerning the above and other issues pre-sen-

tence, but said protests fell on deaf ears; of his counsel, etc. and the Petitioner being of foreign birth and not having full command of the English language, had no other remedy available to him at the time. In addition, he had absolutly no knowledge whatsoever as to the American system of justice or of court procedure. He was in effect, lost.

At the time, the presentation of the "Career Offender" was not only a strange concept to the Petitioner, but it was also suspiciously presented to him as the simultaneous "carrot and stick" approach of the government became more serious with him as they tried to have him not only comply with their information requests; which the Petit-ioner gladly and dutifully complied, but also it was the explicit effort and demonstrated desire of the government to have the Petitioner and then Defendant talk even more. The problem arose when in all truthfull-ness, the Petitioner had no more data that he could give. All the while when this information process was taking place, the looming and con-trived, as the Petitioner thought because he had already paid the price for any outstanding past crimes that he had committed, label of "Career Offender" was hung over his head as a type of"reverse incentive".

The Petitioner was puzzled and unnerved by the experience.

## The Petitioner Can Establish Cause And Prejudice
### For Procedural Default

The Petitioner asserts that he can establish "cause and prejudice" excusing his procedural default, thus giving the Court jurisdiction to entertain and to re-determine his issues which were previously never allowed to be formally presented; ignored or denied by his then counsel and the Hon. Dist. Court. However, before pre-senting the facts which sustain the Petitioner's case, the Petitioner first wishes to detail the following cases in support of his contentions. That in light of recent Supreme Court decisions, this Court has the jurisdiction to re-determine these merits.

A situation which in and of itself and according to law calls to the subject of auxillary ineffectiveness of counsel and in addition, for the Petitioner to re-determine the merits of his previously denied issues.

In Murrary v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397, 106 S.Ct. 2639, the Supreme Court observed that "cause" would be established by a showing that (1) the factual or legal basis for a claim was not reasonably available to counsel; (2) that some interference by officials made compliance impracticable, or (3) the procedural default was the result of constitutionally ineffective assistance. Petitioner establishes "cause" where the full legal basis for his Blakely, Fanfan, and Booker, supra, claims were not available to counsel in that his argument has recently been further developed by the U.S. Supreme Court's decision in these cases. Petitioner can also establish "prejudice" where the court gave Petitioner (120) months in federal custody, in violation of Blakely, Fanfan, Booker, and Shepard, supra.

Under In re Winship, Blakely, Fanfan, Booker and Shepard,[*] the jury did not prove beyond a reasonable doubt that Petitioner was guilty of such a harsh sentence.

Therefore, Petitioner needs to be resentenced since to receive such an enhancement without being aloud to exercise constitutional rights is flatly illegal under the Sixth Amendment of the U.S. Constitution. The 6th Amendment requires that a jury determine beyond a reasonable doubt by clear and convincing evidence all facts legally essential to his sentence.

In Murrary v. Carrier, supra, The Supreme Court stated

[*] As also supported by Greer v. U.S., 4:04-CR-06(CDL) and Dretke v. Haley, OZ-1824

that "even if the same ground was rejected on the merits of a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the re-determination of the grounds." If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application was not full and fair. If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an intervening change in the law or some other justification for having failed to raise a crucial point or argument in the prior application. Blakely, Fanfan, and Booker, supra, are intervening changes in the law which developed a crucial point to Petitioner's argument.

Two (2) further points should be noted. First, the foregoing enumeration is not intended to be exhaustive, the test is "the ends of justice" and it cannot be to finely particularized. Second, the burden is on the applicant to show that, although the ground of the new application was determined against him on the merits of a prior application, the ends of justice would be served by a re-determination of the ground. Following Murry v. Carrier, Bousley, In re Winship, Fanfan, Booker, supra. plus Baily v. United States, 516 U.S. 137; Glover v. United States, 203 U.S. 198, 203; Schlup v. Delo, 513 U.S. 298; Sawyer v. Whitley, 505 U.S. 333, 339-40, 112 S.Ct. 2514, 120 L.Ed.2d 269, and Dugger v. Adams, 489 U.S. 401, 410-12. This court should agree that Petitioner could

not have had a full and fair hearing on the original petition in light of Blakely's expantion.

Petitioner now points to Murray v. Carrier, Bousley, and Baily, supra, where the court explained that the "ends of justice" which requires reconsideration, is determined by objective factors, such as "whether there was a full and fair hearing on the original petition, or whether there was an intervening change in the facts of the case, or the applicable law." In Murray v. Carrier, supra, the Supreme Court found that a "colorable showing of factual innocence" is the test, or the test is whether the alleged error precluded the development of true facts or resulted in the admission of false ones, on a material question involving the sentence, the result is the same. The court then held that at a minimum, the ends of justice will demand consideration of the merits of a claim on a successive petition, where there is a color-able showing of factual innocence. The court was guided by Bousley, supra.

In consideration of whether "the alleged constitutional error [either] precluded the development of facts [or] resulted in the admission of false ones."

Petitioner argues that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United

-6-

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence. See, Bousley, Baily, Murray v. Carrier, Fanfan, Booker, Glover v. United States, Schlup v. Delo, supra, and Richardson v. United States, 526 U.S. 813, 143 L.Ed.2d 985, 119 S.Ct. 1707 (1999).

Petitioner also asserts that "unless the motion and the files and records of the case conclusively show that the Petitioner is entitled to no relief, the court shall cause notice thereof to be served upon the U.S. Attorney, grant a prompt hearing, thereon determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringment of the constitutional rights of the prisoner as to the judgment vulnerable to collateral attack, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him, or grant a new trial, or correct the sentence as may appear appropriate. See the above cited legal cases (on this page) on this matter.

Respectfully, with the foregoing and instructive passage now to the side, the following facts and law should convince this court that Petitioner has established a colorable showing

of factual innocence entitling him to a re-determination of his issues resulting in immediate relief from his present term of imprisonment.

## Issue One

Whether Petitioner's sentence of 10 years or (120) months stands in violation of Due Process, where he was denied his federal constitutional right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence.

In this case, Petitioner plead guilty, but still NO jury was informed of un-constitutional enhancements, all in violation of the Petitioner's Sixth Amendment rights, to a jury verdict according to Blakely, Fanfan, Booker, and In re Winship, supra. With the above being regardless of the Petitioner's having received a substantial sentence reduction for his cooperation, etc. Said credit should have been applied to the non-enhancement and unbiased, not "Career Offender" labeled straight, plain infraction. [1]

Pre-sentencing, Petitioner raised issues directly related to In re Winship, supra, - also an objection to the sentence itself, and to use of enhancements [*]. Now the rule in Apprendi v. New Jersey, 530 U.S. --- 147 L.Ed.2d 435, 120 S.Ct. 2348, In re Winship, Booker, and Fanfan, extended by Blakely, now presents further development of a substantial change in the laws governing a judge's sentencing authority.

Petitioner also contends that under In re Winship, Blakely,

[1] With a reduction taken from or off of the uninflated, initial point sentence.
[*] And "priors" as well.

-8-

Fanfan, and Booker, if the Court is going to make the determin-
ation; it must make findings underv the standard of proof that
requires a jury to find beyond a reasonable doubt, all facts
legally essential to his sentence, and not simply by a preponder-
ance of the evidence.

The Petitioner's 120 month sentence term for violating 21 USC
§§ 846 and 853 which was arrived at via special Downward Departure
considerations was still based upon and drawn from the now improper
use of both enhancements and priors, therefore based upon the
above, his sentence should not stand as is. To do so would artif-
icially depict the credit process, and would in effect short-change
the Petitioner with respect as to how the Supreme Court now dictates
sentencing to take place, especially since the Petitioner was helpful.

Further, Petitioner also asserts that the "ends of justice"
were not served, - where the district court judge inflicted
punishment that the jury's verdict alone did not allow, the
jury did not find all facts, "which the law makes essential
to the punishment, . . . " and which clearly shows that the
judge exceeded his proper authority.

In Blakely, supra, the United States Supreme Court re-
visited the rule in Apprendi.v..New.Jersey, supra, which held
that "other than the fact that increases the penalty for a
crime beyond a prescribed statutory maximum, must be submitted
to a jury and proved beyond a reasonable doubt."

In the Petitioner's case, a colorable showing of factual
innocence is shown where the jury did NOT, nor could they under
Fanfan, Booker, In.re.Winship, supported by Blakely, find the

-9-

Petitioner factually guilty of these charges and enhancements.

## Issue Two

### Petitioner Can Establish "Cause And Prejudice" Where He Is Actually Innocent Of The Sentence Imposed.

In light of Petitioner's contention that he is actually innocent of the sentence imposed upon him, the Supreme Court has had the opportunity to address the meaning of actual innocence in the context of a defendant/petitioner's claim that he/she is actually innocent of the sentence imposed. See, Murray v. Carrier, supra. The court found that "if one is actually innocent" of the sentence imposed, a federal habeas court can excuse the procedural default to correct a fundamental unjust incarceration. Specifically, the petitioner in Ring v. Arizona, 536 U.S. 584, – claimed he was actually innocent of the death sentence imposed on the fact that the trial judge found an equal number of aggravating and mitigating circumstances. Without endeavoring to define actual innocence in this context, the court stated that; "demonstrating that an error is by it's nature, the kind of error that might have affected the aceurary of the death sentence is far from demon-strating that an individual defendant probably is actually innocent of the sentence he or she received." The court later explained that the Ring standard was fashioned to reflect the relative importance of a claim of an erroneous sentence as compared to the correspondings greater injustice that is implicated by a claim of actual innocence of the crime itself. See, Baily,

-10-

Bousley, Ring, Murray v. Carrier, Sawyer v. Whitely, Duggar
v. Adams, supra.

Assuming arguments the government may contend that the
cases above do not apply to Petitioner's argument because
he is not challenging a capital punishment.  Fortunately for
Petitioner, the Supreme Court has never limited the exception
to capital cases.  Several courts including this one, have
considered the questions have heard that the actual innocence
exception is applicable in the context of a challenge to a
non-capital sentence, - See, Spence v. Superintendent,
(Great Meadow Correctional Facility), 219 F.3d 162, 171
2d Cir. (2000); United States v. Maybeck, 23 F.3d 888, 893
4th Cir. (1994); Haley v. Cockrell, 306 F.3d 257 5th Cir.
(2002); Duggar v. Adams, 479 U.S. 401, 410-12, N.6, 109 S.Ct.
1211, 1214, 1217-18, N.6, 103 L.Ed.2d 435 (1989); Sawyer v.
Whitley, 505 U.S. 333, 339-40, 112 S.Ct. 2514, 120 L.Ed.2d
269; Schlup v. Delo, 513 U.S. 298; Dretke v. Haley, No. 02-
1824, at 21.  Also, see, Bousley v. U.S., Bailey v. U.S.,
supra, Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661,
2667-68, 91 L.Ed.2d 436 (1986)(assuming without deciding that
actual innocence exception applies in non-capital sentencing
cases).  This court should recognize the Second Circuit Court's
decision in Spence v. Superintendent, supra, concerning actual
innocence, and in Duggar v. Adams, supra, that this
exception equally applies to non-capital sentences.

In light of Blakely, Fanfan, Booker and In re Winship, supra, Petitioner argues that any sentencing enhancement authorized by the U.S. Sentencing Guidelines Manual violates his Sixth Amendment rights insofar as it permits a judge to find facts that were essential to punishment, rather than a jury. The Blakely court held that it was appropriate for a lower court to consider Blakely issues and add its voice to the dialouge about decsions implication. The court further held that Blakely applied to the federal guidelines and that they were rendered un-constitutional in their entirety by the Blakely application. The drafting of jury instructions was suggested by the court to remedy the problems arising from Blakely's application.

Petitioner's argument has been further developed by Blakely, this court should hold that Petitioner's sentencing has to conform to the pre-1987 system, since the federal guidelines are held un-constitutional. See, Blakely, Fanfan and Booker.


### Issue Three

**Supreme Court Ruling In Blakely v. Washington, 159 L.Ed.2d 403 124 S.Ct. 2531 (2004), Brings New Light To Petitioner's Issues.**

In Blakely, the United States Supreme Court revisted the matters that have been presented to the federal courts across the country for amny years, of un-constitutional matters, the

rule in _Apprendi_, which held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." _Blakely_, No. 02-1632, slip. op. at 5.

The court considered whether the sentencing procedure followed by courts in the State of Washington deprived _Blakely_ of his federal constitutional rights to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. _Id._, at 4. The state sentencing guidelines scheme under which _Blakely_ was sentenced permitted sentencing judges to depart upward from a "standard" sentencing range if the judge found "substantial and compelling reasons justifying an exceptional sentence." _Id._, at 3 (citing) Wash. Rev. Code Ann. § 9.94A 120(2). _Blakely_ having been charged with kidnapping his estranged wife pleaded guilty to second-degree kidnapping, a Class "B" felony under Washington (State) law, that carried a ten (10) year statutory maximum sentence. _Id._, at 2 (citing Wash. Rev. Code Ann. § 9A.40.030(3), and § 9A.20.021(1)(b). Washington's sentencing Reform Act, however, specified a "standard range" of (49-53 months), for _Blakely_'s offense of second-degree kidnapping, with a firearm. _Id._ At sentencing, the court rejected this standard range and imposed an "exceptional sentence" of ninety (90) months imprisonment on the ground that _Blakely_ had acted with "deliberate cruelty," a statutorily enumerated ground for departure in domestic

-13-

violence cases. Id., at 3 (citing Wash. Rev. Code ANN., § 9.94A 390(2)(h)(iii).

Blakely objected to the trial court's sentencing procedure, and in response, the court held a three-day bench hearing featuring testimony from numerous witnesses. Id. at 4. After the hearing, the court issued thirty-two (32) findings of fact, ultimately re-affirming its original decision to impose the (90) month enhanced sentence. Id. On appeal, Blakely argued that the sentencing procedure deprived him of his right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. Id.

The State Appellate Court rejected Blakely's argument and affirmed. Id., at 4-5. On certiorari review, the U.S. Supreme Court reversed in a (5-4) decision, holding that Blakely's enhanced sentence violated Apprendi. Id., at 9. Notably, the court rejected the state's argument that Blakely's case was distinguisable from Apprendi, supra, because his (90) month sentence did not exceed the ten (10) year statutory maximum for Class "B" felonies, explaining that our precedents make clear, . . . that the "statutory maximum" for Apprendi is the maximum sentence a judge may impose soley on the basis of the facts reflected in the jury verdict or admitted by the defendant, . . . in other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he

may impose without any additional findings when a judge inflicts punishment that the jury's verdict alone does not allow the jury has not found all the facts, "which the law makes essential to the punishment," . . . and the judge exceeds his proper authority.

In Richardson v. United States, 526 U.S. 813, 143 L.Ed.2d 985, 119 S.Ct. 1707 (1999), the court determined that the Richardson rule though it is not retroactive, was retroactively applicable on collateral review because it was a substantive change in the law.

Therefore, since petitioners filed their motions raising the Apprendi issue within one (1) year of the Richardson decision, their petitions were timely under the statute of limitations contained in 28 U.S.C. § 2255(3). Blakely is the same situation, though not retroactive,* it is a substantive change in the law providing that the sentencing guidelines are unconstitutional, not unlike the act of avoiding the requirement that every element of a charged offense be proven beyond a reasonable doubt, thus making it retroactively applicable on collateral review.

Blakely requires that a sentence not exceed the maximum allowed by statute unless facts that may permit a more servere maximum sentence, such as drug quantity, and relevant conduct are found by a jury beyond a reasonable doubt. See, Blakely, Fanfan, and Booker, supra.

The facts in this case are plain. Petitioner previously
* Confirmed as YES retroactive for enhancement arguments via Hughes, (4th Cir. 2005)

-15-

[Even, though on Direct here(Hughes)] then and now, implying generally, for all retoractive applications, creates questionable original court jurisdiction in sentencing issues which were denied on their merits. Accordingly, the Supreme Court stated that; "even if the same ground was rejected on the merits of a prior application it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant was not full and fair." If purely legal questions are involved, the applicant maybe entitled to a new hearing upon showing an argument in the prior application. Two (2) further points should be noted. First, the foregoing enumeration is not intended to be exhaustive, the test is "the ends of justice" and it cannot be too finely particularized. Second, the Petitioner has shown that, although the ground of the new application was determined against him on the merits of a prior application, the ends of justice would be served by a redetermination of the ground. See, Murray v. Carrier, Sawyer v. Whitley, Blakely, Bousley, Baily, and Dugger v. Adams, supra.

In summation, since Blakely is based on an extention of Apprendi, Fanfan, Booker, and In re Winship, Petitioner argues that these cases cited above now broadened by the Supreme Court recent decison in Blakely, constitutes an intervening change in the law expounding on his avenues for relief.

Accordingly, there couldn't possibly have been a full and fair hearing on the original petition. Thus, the "ends of justice" will only be fully served by this Honorable Court

considering the petitioner's claims in his § 2255 Action. As such, this Court should vacate and set aside the judgement or to have the Petitioner remanded back for a hearing.

## Issue Four

### Prior Convictions

The Petitioner was enhanced and declared a "Career Offender" within the meaning of U.S.S. Guideline § 4B1.1 and Category assignment of V. The career offender provision was according to government resources, "applicable" in the case of the Petitioner because and due to the fact that the Petitioner was at least 18 years old at the time that he committed the instant offense of conviction and that the instant offense of conviction was indeed a felony that was either a crime of violence or of a controlled substance nature. This, as coupled with his past or"prior" infraction(s) which were of a similar nature.

These so-called priors were never included inany part of the Indictment(for enhancement purposes) nor did the Petitioner stipulate to them in open court. Nor were they ever heard by a jury of his peers. Therefore, the Petitioner's Plea would be involuntary and unintelligent. The Petitioner never stipulated to the label of "Career Offender" in any Plea Agreement. Had the Petitioner known that he would be first enhanced as a "Career Offender", to then receive a Rule 35 consideration and a Downward Departure, he would not have offered a "guilty plea" to the Court in the fashion as he did. The forementioned represents a (5th and) 6th Amendment based unconstitutional enhancement in violation of Blakely, Booker, Supra. and thereby signifies that the Petitioner should be duly remanded back to court for a hearing for same.

-17-

Pursuant to the government's processing in this case and as part of the Petitioner's construed "Career Offender" status the following list of past conviction(s)were applied:

All in the 11th Judicial District Of Queens; 125-01 Queens Blvd.
Kew Gardens, NY 11415
With District Atty. Richard A. Brown
For The State

Indictment # 10619-96 Arrest date4-01-96 Charge: Attempted Crim. Sale of Contrl Subst. 3rd Deg.Warrant Issued 03-19-98 W065204096

Indictment # 10779    Arrest date 04-72-96 Charge: Crim. Sale Of Cntrl Substance 3rd  Warrant Issued 07-19-98 W065204096

[Indictment # Arrest date 06-18-96 Charge: Crim. Poss. Cntrl. Subst 3rd Degree With Intent To Sell Warrant issued 03-19-98 W06520496]

With the above serving as part of the final sentence formulation calculation, now under dispute as enhancement based augmentation for sentencing.

## Conclusion

The law choose to only apply to anyone now "coming into the system," (BOP) rather than those who are already serving their sentences.  This now MAJOR problem creates unjust "playing fields" and would suggest to the common man that the U.S. Constitution will only apply as of the January 12, 2005 ruling, this cannot be so.

Both Fifth & Sixth Amendment rights are in question here in this matter at bar, but also when does the U.S. Constitution come "into play" for all accused ?  Since (again) both Fifth & Sixth Amendment rights have not been satified, Petitioner is still being violated based on an un-constitutional enhancement

never being heard by a jury. Petitioner is therefore actually innocent of his conviction and sentence.

Those who now challenge Blakely, Fanfan and Booker, on collateral review, (may) receive no constitutionality on their conviction and sentence because (one) the law (may not be) retroactively applied, (which it should be) to those on collateral review. Even though Petitioner's enhancements did not go and was not heard by a jury, nor in his indictment, these enhancements still remain un-constitutional, it is that simply.

To offer the Petitioner an "equal playing field" and to correct this violation, the court should remand this matter back for a hearing, and relief should be granted. See, Murray v. Carrier, supra, and Harper v. Virginia Dept. of Taxation, 509 U.S. -- --- 125 L.Ed.2d 74, 113 S.Ct. 2510 (1993), held that when (1) the court decides a case and applies the (NEW) legal rule of that case to the parties before it, then (2) it and other courts must treat that same (NEW) legal rule as "retro-active," applying it to all pending cases. See, also, Reynoldsville Casket Co., et. al. v. Hyde, 514 U.S. -- , 131 L.Ed.2d 820, 115 S.Ct. 1745, at pg. 826 in 131 L.Ed.2d, the Petitioner's Due Process rights are violated if he is denied retroactivity under Blakely, Booker and Fanfan. These ruling clearly state that a jury must hear enhancements, theu must be in an indictment, or stipulated (by a defendant) in open court and a defendant cannot be enhanced by a federal judge, by

preponderance of the evidence.  <u>See</u>, Federal Constitution's Supremacy Clause (Art. Vi, Cl. 2).  The <u>Booker</u>, <u>Blakely</u>, and <u>Fanfan</u> cases do not state that these new rulings cannot be applied retroactively, and for any other case dating back to 1987.

Also, in <u>Richardson v. United States</u>, 526 U.S. 813, 143 L.Ed.2d 985, 119 S.Ct. 1707 (1999), the court determined that the <u>Richardson</u> rule though is not retroactive was retroactively applicable on collateral review because it was a substantive change in the law.

Since June, 2004, when the case of <u>Blakely</u>, <u>supra</u> first introduced itself to legal analysis across the nation, it brought "waves" of anticipation for inmates (both federal and state) in the country.  Now with recent U.S. Supreme Court rulings, (5-4 vote) on <u>Fanfan</u>, and <u>Booker</u>, <u>supra</u>, these justices of the highest court stated that since 1987 federal defendants have been indicted, processsed, convicted, and sentenced <u>un</u>-constitutionally.  The court's decision expressly indicated that both rulings apply to all cases that are now pending direct appeal or otherwise "not yet final."  Beyond that however, the court did not address how its decision might apply to other cases.  The questions which must be put to the test by this court and all courts, (BOTH) federal & state, is how can the U.S. Constitution only stand as of January 12, 2005, was that the date the Constitutionwas written or somehow taken

out of suspension ?  (as of the Emergery War Powers Act of March 9, 1933 ?).

If any individual stands in a court of law on any date in the United States, is the Constitution not the Supreme law of the land ?  Does the president not swear to "uphold, protect, and defend the U.S. Constitution," . . . if not, what is the Constitution and is it in effect in this country ?  How can the Constitution be ignored since 1987 ?  How can any defendant post-January 12, 2005 be allowed the benefits of the U.S. Constitution and it's laws, and any defendants BEFORE January 12, 2005 are not ?  This means no equal and fair "playing field" for anyone from 1987 - to - January 12, 2005.  If there is no Constitution, there are no laws, and how could anyone break a law, which there is no authority of a Constitution to break in the first place ?  Therefore, once again, Petitioner requests to be brought before the court for a hearing on this matter.

WHEREFORE, subject to the court's gracious understanding and consideration of this matter now at bar, Petitioner thanks the court in anticipation that his motion will be GRANTED or remanded back for a hearing.  Petitioner believes that these issues are ones of masterful meritorious nature and must be clarified for the benefit of the courts and future, and past defendants/petitioners in this cause for true and total justice.

Petitioner also wishes to state to this court that once a <u>pro se</u> litigant has done everything possible to bring his

action, he should not be penalized by strict rules as they might be applied, in an otherwise fashion if he were represented by legal counsel. See <u>Ortiz v. Cornetta</u>, 867 F. 2d 146 2nd Circuit (1989).

Accordingly, fairness, integrity of the Due Process and Justice principles require this Honorable Court to GRANT the Petitioner's request in this matter now at bar. To be done and carried out under the guaranteed conditions wherein the Petition would not be exposed to any form(s) whatsoever of retaliation by the Government for his rightly seeking a reconsideration of sentence, particularly in the form of the possible attempt to assign the Petitioner more time in the form of sentence than he experienced upon his original adjudication process. In good faith the Petitioner submits the enclosed.

Respectfully Submitted,

*franz Guzman*

Dated: 03-30 ,2005
Franz Guzman
REG# 24826-038
FCI Schuylkill
POB 759
Minersville, Pa. 17954

## Certificate Of Service

I, The Petitioner Franz Guzman, duly swear to and affirm that I have sent a true and correct copy of my Petition under §2255 and its accompanying Memorandum Of Law And Brief, Argument to the following addresses:     Clerk Of Court
USDC For The Dist.
Of Mass. 1 Courthouse
Way, Boston Mass.     Respectfully Submitted,
02210     *franz Guzman*
Franz Guzman
REG# 24826-038
FCI SCHUYLKILL
POB 759 MINERSVILLE, PA. 17954

Dated: 03-30 ,2005

NAME _____ TITLE _____
AUTHORIZED BY THE ACT OF JULY 7, 1955 TO
ADMINISTER OATHS (18 USC 4004)      -22-